**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| FRONTLINE PLACEMENT TECHNOLOGIES, INC., | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) ) | Civil Action No. 07-2457 |
| CRS, INC., | ) ) ) | Hon. Eduardo C. Robreno |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## ANSWER AND COUNTERCLAIMS

Defendant CRS, Inc., by and through its undersigned attorneys, answers the Complaint of

Frontline Data, Inc. as follows:

### JURISDICTION AND VENUE

1. Admitted.

2. Admitted.

3. Admitted that this Court has personal jurisdiction over CRS pursuant to

Pennsylvania's long arm statute, 42 Pa. C.S.A. §§ 5301 et seq., that CRS, acting alone or in

concert with third parties, is engaged in substantial and not isolated activities within the

Commonwealth of Pennsylvania, in part within this district, and that CRS is intentionally selling

products and services to third parties for use in Pennsylvania.  The remaining allegations of

paragraph 5 of the Complaint are denied.

4. Admitted.

## THE PARTIES

5.      Admitted upon information and belief.

6.      Admitted upon information and belief.

7.      Admitted that CRS's principal place of business is 500 Arch Street, Williamsport, Pennsylvania 17701. The remaining allegations of paragraph 7 of the Complaint are denied.

8.      Admitted that CRS competes with Frontline to provide certain types of substitute worker location services. The remaining allegations of paragraph 8 of the Complaint are denied.

## FACTUAL BACKGROUND

9.      Admitted that Frontline uses a system, referred to as Aesop, that facilitates posting of worker absences and substitute placement, that users may access the Aesop system via the Internet using a Web interface or via a telephone interactive voice response (IVR) system, that customers may access Aesop to post work absences for which substitutes are needed, and that substitute workers may access Aesop to search for posted worker absences and to commit to filling vacancies. CRS does not have sufficient information to admit or deny the remaining allegations of paragraph 9 of the Complaint.

10.      CRS does not have sufficient information to admit or deny the allegations of paragraph 10 of the Complaint.

11.      Admitted that CRS acting alone or in concert with third parties, developed systems and services to compete against Frontline and Frontline's Aesop system. The remaining allegations of paragraph 11 of the Complaint are denied.

## *FRONTLINE'S '151 PATENT*

12.      Admitted that on January 6, 2004, U.S. Patent No. 6,675, 151 (the '151 patent), titled "System and Method for Performing Substitute Fulfillment Information Compilation and

Notification," was issued by the United States Patent and Trademark Office ("PTO") in the names of Roland R. Thompson and Michael S. Blackstone, and that a copy of the '151 patent is attached as Exhibit A to the Complaint. CRS does not have sufficient information to admit or deny if the copy of the '151 patent is a true and correct copy and states that the copy of the '151 patent is a document that speaks for itself. The remaining allegations of paragraph 12 of the Complaint are denied.

13.    CRS states that the '151 patent is a document that speaks for itself. CRS does not have sufficient information to otherwise admit or deny the allegations of paragraph 13 of the Complaint.

## FRONTLINE'S PRIOR LAWSUIT FOR INFRINGEMENT OF THE '151 PATENT

14.    Denied.

15.    Admitted.

16.    Admitted that, in November 2005, Frontline Data, Inc. entered into an agreement with Frontline granting CRS a limited license under, inter alia, the '151 patent. The remaining allegations of paragraph 16 of the Complaint are denied.

17.    Admitted that, on November 8, 2004, a Notice of Stipulated Dismissal Without Prejudice was filed in connection with the prior litigation. The remaining allegations of paragraph 17 of the Complaint are denied.

## CRS'S BREACH OF THE LICENSE AGREEMENT AND INFRINGEMENT OF THE '151 PATENT

18.    Admitted that, in consideration of the license granted to CRS, Section 3 of the license agreement sets forth the terms and conditions under which a license fee in the form of a

royalty shall be paid to Frontline.  The remaining allegations of paragraph 18 of the Complaint are denied.

19.    Denied.

20.    Admitted that Frontline notified CRS that it believed that CRS was in breach of the license agreement and provided CRS with an opportunity to cure the alleged breach.  The remaining allegations of paragraph 20 of the Complaint are denied.

21.    Admitted that CRS's actions were not accepted by Frontline as a cure of any alleged breach.  The remaining allegations of paragraph 21 of the Complaint are denied.

22.    Admitted that, on June 15, 2007, Frontline told CRS that it was terminating the license agreement.  The remaining allegations of paragraph 22 of the Complaint are denied.

23.    Admitted that CRS continues to make, use, sell, and offer to sell systems and services. The remaining allegations of paragraph 23 of the Complaint are denied.

## COUNT FOR PATENT INFRINGEMENT

24.    CRS incorporates herein the answers set forth in Paragraphs 1-11 above.

25.    Admitted.

26.    Denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    No answer required.

## AFFIRMATIVE DEFENSES

CRS asserts the following affirmative and other defenses and reserves the right to amend its Answer as additional information becomes available.

### First Defense: Failure to State a Claim

Frontline's Complaint fails to state a claim upon which relief can be granted.

### Second Defense: License

CRS was granted a world-wide, non-exclusive license, with the right to grant sub-licenses, under the claims of the '151 patent to make, use, import, offer to sell or sell education substitute fulfillment products and services that was wrongfully terminated by Frontline.

### Third Defense: Non-Infringement

CRS has not infringed and does not infringe any valid, enforceable claim of the '151 patent.

### Fourth Defense: Invalidity

The '151 patent is invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

### Fifth Defense: Unenforceability

The '151 patent is unenforceable due to actions taken by Frontline to coerce royalty payments from CRS that amount to patent misuse.

### Sixth Defense: Unclean Hands

Frontline is barred under the doctrine of unclean hands from obtaining any relief or recovery against CRS.

### JURY DEMAND

CRS requests a trial by jury as to all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Defendant CRS prays for relief as follows:

A.    That the Court enter judgment in favor of CRS, and against plaintiff Frontline;

B.    That the Court find the '151 patent has not been infringed by CRS;

C.    That the Court find the '151 patent is invalid;

D.    That the Court find the '151 patent is unenforceable for patent misuse;

E.    That the Court find that Frontline is barred under the doctrine of unclean hands from obtaining any relief or recovery against CRS;

F.    That Frontline take nothing by its Complaint against CRS;

G.    That the Court deny any and all of Frontline's requests for injunctive relief;

H.    That the Court dismiss Frontline's Complaint in its entirety, with prejudice;

I.    That the Court find this case to be exceptional under 35 U.S.C. § 285, and award CRS its costs and fees in this action, including reasonable attorneys' fees and prejudgment interest thereon; and

K.    That the Court grant CRS such other and further relief as it deems just and proper.

## COUNTERCLAIMS

For its counterclaims against Frontline, CRS alleges as follows:

1.    Counterclaim-Plaintiff CRS, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 500 Arch Street, Williamsport, Pennsylvania 17701.

2.    Counterclaim-Defendant Frontline Placement Technologies, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 5 Great Valley Parkway, Suite 300, Malvern, Pennsylvania 19355.

3.    This Court has personal jurisdiction over Counterclaim-Defendant Frontline Placement Technologies, Inc. pursuant to Pennsylvania's long arm statute, 42 Pa. C.S.A. §§ 5301

et seq.  Upon information and belief, Frontline is engaged in substantial and not isolated activities within the Commonwealth of Pennsylvania, in part within this district, including receiving money from the licensing of the '151 patent and making, using, selling, and/or offering for sale products and services, including products and services allegedly within the scope of the '151 patent.

      4.      Venue is proper in this district by virtue of 28 U.S.C. § 1391(b), (c).

      5.      Pursuant to Section 9.2  of the parties' license agreement, Frontline has submitted to the jurisdiction and venue of this Court and waived all defenses relating to said jurisdiction and venue.

### COUNT ONE (Declaratory Judgment of No Breach of Contract by CRS)

      6.      CRS incorporates Paragraphs 1-5 of these Counterclaims as is fully set forth herein.

      7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1367 and 2201-02.

      8.      In November 2004, Frontline's predecessor-in-interest, Frontline Data, Inc., entered into a license agreement with CRS granting CRS a limited license under, *inter alia*, the '151 patent.  A true and correct copy of this license agreement is attached as Exhibit A.

      9.      CRS has fully complied with its obligations under the terms of the parties' license agreement, including the royalty obligations set forth in Section 3.1 of the license agreement.

      10.      Notwithstanding CRS's compliance, a genuine controversy has arisen between the parties regarding CRS's compliance with its obligations under the terms of the parties' license agreement.

      11.      CRS is entitled to a declaratory judgment that it has not breached the parties' license agreement (or, in the alternative, that any alleged breach was not material), and that CRS,

its sublicensees, and their customers are entitled to practice the inventions claimed in the '151

patent or any other patent licensed by Frontline in accordance with the terms of the parties'

license agreement.

### COUNT TWO (Breach of Contract - Wrongful Contract Termination)

12.     CRS incorporates Paragraphs 1-5 and 8-11 of these Counterclaims as if fully set

forth herein.

13.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1367 and 2201-02.

14.     Frontline owed, and continues to owe, CRS a duty and covenant of good faith and

fair dealing under the license agreement.

15.     Frontline has acted in bad faith, breached its duty of good faith and fair dealing

under the license agreement, and materially breached the parties' license agreement by

wrongfully terminating it on June 15, 2007.

16.     Frontline's wrongful termination of the parties' license agreement has caused and

will continue to cause CRS irreparable harm to its business, reputation and goodwill, and such

damage will continue unless Frontline is enjoined by this Court from asserting that CRS

materially breached the license agreement or that CRS, its sublicensees, or their customers have

no right to practice the inventions claimed in the '151 patent or any other patent licensed under

the parties' license agreement.

17.     Frontline's wrongful termination of the parties' license agreement has monetarily

damaged CRS.  Further monetary damages in the form of lost sales, lost ancillary sales, price

erosion, and the like are reasonably foreseeable so long as Frontline continues to refuse to

acknowledge that CRS, its sublicensees, and their customers are entitled to practice the

inventions claimed in the '151 patent or any other patent licensed by Frontline in accordance

with the terms of the parties' license agreement and/or asserts that the actions of CRS or its sublicensees constitute infringement of Frontline's patents, causing CRS to lose business to Frontline or its licensees.

### COUNT THREE (Breach of Contract - Most Favored Nations Clause)

18.     CRS incorporates Paragraphs 1-5 and 8-11 of these Counterclaims as if fully set forth herein.

19.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1367 and 2201-02.

20.     On information and belief, Frontline breached the parties' license agreement by failing to accord CRS most favored nation treatment and to reduce the royalty obligation of CRS and its sublicensees in accordance with the language of Section 3.3 of the parties' license agreement.

21.     On information and belief, Frontline's breach of the parties' license agreement has monetarily damaged CRS.

### COUNT FOUR (Declaratory Judgment of Noninfringement)

22.     CRS incorporates Paragraphs 1-5 of these Counterclaims as if fully set forth herein.

23.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201-02.

24.     CRS is entitled to a declaratory judgment that it has not infringed and does not infringe any valid, enforceable claim of the '151 patent.

### COUNT FIVE (Declaratory Judgment of Patent Invalidity)

25.     CRS incorporates Paragraphs 1-5 of these Counterclaims as if fully set forth herein.

26.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201-02.

27.     CRS is entitled to a declaratory judgment that the '151 patent is invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

## JURY DEMAND

CRS requests a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff CRS prays for relief as follows:

A.     That the Court enter final judgment in favor of CRS, and against Counterclaim-Defendant Frontline on all Counts;

B.     That the Court enter a declaratory judgment that CRS has not breached the parties' license agreement (or, in the alternative, that any alleged breach was not material), and that CRS, its sublicensees, and their customers are entitled to practice the inventions claimed in the '151 patent or any other patent licensed by Frontline in accordance with the terms of the parties' license agreement;

C.     That the Court find that Frontline has breached the parties' license agreement by wrongfully terminating it on June 15, 2007;

D.     That the Court enter an order preliminarily and permanently enjoining Frontline from asserting that CRS materially breached the parties' license agreement or that CRS, its sublicensees, or their customers have no right to practice the inventions claimed in the '151 patent or any other patent licensed under the parties' license agreement;

E.      That the Court enter an award of money damages with interest resulting from Frontline's wrongful termination of the parties' license agreement;

F.      That the Court find that Frontline has breached the parties' license agreement by failing to accord CRS most favored nation treatment and to reduce the royalty obligation of CRS and its sublicensees in accordance with the language of Section 3.3 of the parties' license agreement;

G.      That the Court order Frontline to refund to CRS license fees with interest collected by Frontline from CRS and its sublicensees in excess of that required by the terms of the parties' license agreement or, in the alternative, to apply such amounts as a set-off against any damage claim it successfully asserts in this action;

H.      That the Court take into consideration the amount of license fees collected by Frontline from CRS and its sublicensees in excess of that required by the terms of the parties' license agreement in determining whether CRS committed a material breach of the license agreement;

I.      That the Court enter a declaratory judgment that CRS has not infringed and does not infringe any valid, enforceable claim of the '151 patent;

J.      That the Court enter a declaratory judgment that the '151 patent is invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112;

K.      That Frontline take nothing by its Complaint against CRS;

L.      That the Court deny any and all of Frontline's requests for injunctive relief;

M.      That the Court dismiss Frontline's Complaint in its entirety, with prejudice;

N.       That the Court find this case to be exceptional under 35 U.S.C. § 285, and award CRS its costs and fees in this action, including reasonable attorneys' fees and prejudgment interest thereon;

O.       That, in the event that the Court finds that a royalty is owed as a matter of equity to Frontline based on licensed activity on the part of CRS and/or its sublicensees under circumstances where no royalty is expressly or unambiguously set forth in the parties' license agreement, the license agreement be reformed to specify a fair and equitable royalty payment for such licensed activity in the future; and

P.       That the Court grant CRS such other and further relief as it deems just and proper.


Dated: July 24, 2007                          Respectfully submitted,
                                              /s/ *Darrel C. Karl*
                                              Finnegan, Henderson, Farabow,
                                                Garrett & Dunner, L.L.P.
                                              1300 I Street, N.W.
                                              Washington, D.C. 20001-4413
                                              (202) 408-4000

                                              Charles S. Marion  (PA 56509)
                                              Pepper Hamilton LLP
                                              3000 Two Logan Square
                                              Eighteenth and Arch Streets
                                              Philadelphia, PA 19103-2799
                                              (215) 981-4119

                                              Attorneys for CRS, Inc.

# **EXHIBIT A**

## LICENSE AGREEMENT

THIS LICENSE AGREEMENT ("Agreement") is entered into by and between FrontLine Data, Inc., a Pennsylvania Corporation ("FrontLine") located at 5 Great Valley Parkway, Suite 300, Malvern, Pennsylvania 19355, and CRS, Inc. ("CRS") located at 500 Arch Street, Williamsport, Pennsylvania 17701, as of the date on which this Agreement has been fully executed by all of the parties hereto ("Effective Date").

FrontLine desires to grant to CRS an end-user license in the L icensed Patents under the terms of this Agreement, and CRS desires to obtain that end-user license.

In consideration of the foregoing and the respective promises and covenants contained in this Agreement, FrontLine and CRS hereby agree as follows:

1.     **Definitions**.

The following terms shall have the meanings set forth below:

1.1     **Licensed Patents**.  "Licensed Patents" means (a) United States Patent No. 6,334,133, titled "System and Method for Performing Substitute Fulfillment" (the '133 patent) and No. 6,675,151, titled "System and Method for Performing Substitute Fulfillment Information Compilation and Notification" (the '151 patent), (b) any other related patent or patent application owned or hereinafter acquired by FrontLine anywhere in the world that includes the same disclosure as or that relies for priority on either of the '133 and '151 patents, and (c) any patents issuing from any such application or from continuations, continuations-in-part, or divisionals of such applications or the applications that matured into the '133 and '151 patents, and (d) any reexaminations or reissues of any of the foregoing patents.

1.2     **Licensed Products and Services**.  "Licensed Products and Services" means all education substitute fulfillment products and services sold or licensed by CRS to school districts and other educational institutions or sold or licensed by CRS to a sub-licensee acting as an intermediary (hereinafter "intermediate sub-licensee") to school districts and other educational institutions for use with an Internet-based platform in fulfilling open or vacant educational positions from a database accessible via the Internet or other network, the manufacture, use, importation, offer for sale, or sale of which would infringe an unexpired, valid, and enforceable claim of any of the issued Licensed Patents.

2.     **License**.

2.1     **Grant**.  FrontLine grants to CRS a world-wide non-exclusive license under the claims of the Licensed Patents to make, use, import, offer to sell or sell CRS's Licensed Products and Services, subject to the terms of this Agreement.  This license is limited to education substitute fulfillment products and services only and does not include any r ight to grant or issue sub-licenses e xcept as set forth in Paragraphs 2.2 and 2.3 below.  Any other attempt to grant or issue sub-licenses without the express written consent of FrontLine, which may be withheld by FrontLine for any reason, shall be void.

FrontLine, however, agrees to negotiate in good faith with CRS upon request regarding a separate license to CRS to make, use, import, offer for sale, or sell substitute fulfillment products and services outside the field of education and the ability of CRS to grant sub-licenses not otherwise satisfying the requirements set forth in Paragraphs 2.2 and 2.3 below.   "Good Faith" only means that FrontLine will discuss a separate license with CRS and attempt to work out an arrangement that is reasonable and mutually satisfactory for both parties, but does not require or otherwise obligate the parties to enter into or agree to a separate license.

2.2   **Sub-licenses.**   CRS or an intermediate sub-licensee of CRS may grant an end-user sub-license to a customer of CRS's Licensed Products and Services; provided, however, that each of the following conditions is met: (a) said end-user sub-license shall be strictly limited to the use of the Licensed Products and Services only; (b) said end-user sub-license is non-assignable, non-transferable and non-divisible and is entirely derivative of and dependent on the license and rights granted in this Agreement to CRS; (c) said end-user sub-license is subject to all of the terms, conditions, restrictions and definitions set forth in this Agreement; and (d) said end-user sub-license shall terminate upon any termination of the Agreement or the license granted herein to CRS.

2.3   **Intermediate Sub-licenses.**   CRS may grant an intermediate sub-license to an entity to use or license the Licensed Products and Services; provided, however, that each of the following conditions is met: (a) said intermediate sub-license shall be strictly limited to the use of the Licensed Products and Services solely on behalf of school districts and other educational institutions in exchange for a fee provided by said school districts and other educational institutions or to license Licensed Products and Services to school districts and other educational institutions only and the intermediate sub-licensee is not permitted itself to otherwise use, make or sell the Licensed Products or Services; (b) s aid int ermediate s ub-license is no n-assignable, no n-transferable a nd no n-divisible and is entirely derivative of and dependent on the license and rights granted in this Agreement to CRS; (c) said intermediate sub-license is subject to all of the terms, conditions, restrictions and definitions set forth in this Agreement; (d) said intermediate sub-license shall terminate upon any termination of the Agreement or the license granted herein to CRS.   It is also agreed and understood that CRS may not grant such an intermediate sub-license under any c ircumstance to the following companies: Eschool Solution (Orlando, Florida), Substitute Online, Inc. (Mukilteo, Washington) and Substitute Personnel Solutions, Inc. (Kingston, Pennsylvania).

2.4   **Release.**   Except as to such rights and obligations specifically created by this Agreement, the parties, on behalf of themselves and their officers, directors, agents, employees, successors, and assigns, forever release and discharge each other and their present and former parents, subsidiaries, and affiliates, and themselves and their officers, directors, agents, employees, successors, assigns, resellers, distributors, and customers (mediate and immediate), from all past and present claims, liabilities, o r damages of whatever form, known o r unknown, matured or unmatured, based in a ny way on the Licensed Patents arising prior to the Effective Date of this Agreement.

WSHLIB01 198882.1

3.     **License Fee.**  In consideration of the license granted herein, CRS shall pay and deliver to FrontLine a License Fee as follows:

3.1     During the term of this Agreement CRS shall pay to FrontLine a Running Royalty which constitutes 8% of the gross revenues received from the sale, lease or license ("Sales") of Licensed Products and Services, including sales of any software upgrades.  CRS will pay FrontLine an 8% royalty for Licensed Products and Services based upon the gross revenues received from Sales made at a price, which for its systems shall be no lower than the current amount for which it sells its systems, which is $4,295.00.  Thus, it is agreed that the minimum royalty FrontLine will receive when CRS sells a system is 8% of $4,295.00 or $343.60 per sale, although if the sales price for a system is higher than $4,295.00, FrontLine shall instead receive 8% of the gross revenues at the higher price.  CRS acknowledges that  its software upgrades are not subject to a discount and CRS will pay FrontLine 8% of the gross revenues received from Sales of all software upgrades.  Such Running Royalties shall be paid within 30 days of the end of each quarter.

3.2     CRS understands that the royalty rates described above are discount rates based upon the fact that the Parties were willing and able to agree on the terms of this license and execute the Agreement in an expedited manner and taking into account the financial considerations confronting most educational users.

3.3     If FrontLine enters into an agreement with another entity that is related to the Licensed Patents and requires the payment of a royalty to Frontline that is less than the royalty rate CRS is paying under this Agreement, CRS shall be entitled to a reduction of the royalty rate equal to the royalty rate as provided for in the other agreement.   This provision shall only apply if the terms and conditions of the other agreement are materially similar to the terms and conditions in this Agreement.  FrontLine is permitted to redact the name of its licensees as well as any business-sensitive provisions in such other agreements not otherwise relied upon by FrontLine that the other agreement is not materially similar to  justify a reduction in the royalty rate.

4.     **Records and Reports.**

4.1     CRS shall prepare and submit to FrontLine within thirty (30) days after the end of each quarter during the term of this Agreement, together with the payments mentioned in Paragraph 3.1, a report which shows:

(a)     a description of each of the Licensed Products and Services sold by CRS during the quarter, and for each such sale, the U.S. dollar equivalent of the amount of the gross revenues received, as well as a calculation of the royalty due on account of such receipt;

(b)     for each sale identified in Paragraph 4.1(a), the account number of the purchaser and the date on which such sale was made.

WSHLIB01 198882.1

4.2     CRS shall at all times during the term of this Agreement and for six months thereafter keep at its place of business accurate books and records sufficient to show the information referred to in Paragraph 4.1 of this Agreement.  FrontLine shall have the right, once per calendar year, to appoint a third party auditor to inspect said books and records during normal business hours and upon ten days notice, for the purpose of verifying amounts of Running Royalties paid.  The costs of such inspections shall be borne by FrontLine; provided, however, that in the event that any such inspection reveals that Running Royalties payable for any calendar quarter are five percent (5%) or more greater than the Running Royalties actually paid for such quarter, then such costs shall be borne by CRS.

**5.     Taxes.**  F rontLine is no t r esponsible f or a ny s ales, us e, v alue-added, p ersonal property or other taxes imposed on CRS's preparation, provision, use, possession, offer of sale or sale of the Licensed Products and Services.  Each party shall be solely responsible for any taxes based on its own net income.

**6.     Term and Termination.**

6.1     The t erm o f t his A greement s hall b e f rom t he Effective D ate unt il t he latest expiration date of any of the Licensed Patents unless earlier terminated as provided herein or unless all Licensed Patents are finally ruled invalid or unenforceable by a court of competent jurisdiction or by the appropriate patent office or other administrative agency in a final judgment or order from which no appeal can be or is taken.

6.2     FrontLine may terminate this Agreement after written notice to CRS that CRS has materially breached any of the terms and conditions of this Agreement, provided that CRS fails to cure such breach within thirty (30) days after receipt of such notice.

6.3     In the event of termination of this Agreement, CRS shall not be entitled to a refund of any payments made to FrontLine.

6.4     CRS hereby acknowledges and agrees that it will not challenge the validity or enforceability of the Licensed Patents in any administrative or court proceeding; provided however, that should Frontline fail to negotiate in good faith with CRS upon request a separate license to CRS to make, use, import, offer for sale, or sell substitute fulfillment products and services outside the field of education, CRS may thereafter challenge the validity or enforceability of the Licensed Patents in any administrative or court proceeding. "Good Faith" only means that FrontLine will discuss a separate license with CRS and attempt to work out an arrangement that is reasonable and mutually satisfactory for both parties, but does not require or otherwise obligate the parties to enter into or agree to a separate license.  CRS may terminate the Agreement insofar as it applies to Licensed Products and Services in a given country in the event that all of the Licensed Patents in such country (a) expire; (b) are invalidated or held to be unenforceable by a court from which an appeal cannot or has not been taken; (c) any combination of (a) and (b) such that no valid, enforceable, or unexpired Licensed Patents remain extant.

-4-

7.    **Limitations**.

7.1    Nothing contained in this Agreement shall be construed as creating any form o f l icense o r r ights unde r a ny c opyrights, m ask w orks, t rademarks, t radenames, service marks, service names, trade secrets, know-how or confidential information owned or controlled by the parties.

7.2    FrontLine represents and warrants that it owns the Licensed Patents and that it has the right to grant the license to CRS as granted in this Agreement.

7.3    **Disclaimer**.  ALL WARRANTIES EXPRESSLY SET FORTH HEREIN, IF ANY, ARE IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED (INCLUDING THE IMPLIED WARRANTIES OF FITNESS FOR PARTICULAR USE OR OF MERCHANTABILITY) AND ANY WARRANTY OF NON-INFRINGEMENT) OR ASSERTED TO ARISE BY IMPLICATION UNDER ANY STATUTE, RULE OR REGULATION OF ANY JURISDICTION. ALL SUCH OTHER WARRANTIES ARE HEREBY DISCLAIMED.

7.4    **Indemnification**.  CRS shall indemnify and hold harmless FrontLine from and against any and all claims, liabilities, demands, causes of action, damages, judgments, losses, costs, and expenses, including without limitation attorneys' fees and costs of suit arising out of or in connection with Licensed Products and Services provided in whole or part by CRS.

7.5    **Marking**.  CRS shall permanently mark, and cause any sublicensees under Paragraph 2.2 and 2.3 above to mark in such manner as to provide reasonable notice on at least one screenface generated or supported by Licensed Products and Services in writing, and on at least one page of any hard copy of technical documentation provided with the Licensed Products and Services, and in the manner required by 35 U.S.C. § 287, the number of the Licensed Patents. CRS and its end-user sublicensees may advertise or reference the fact that CRS's Licensed Products and Services are licensed under the Licensed Patents and that such patents are owned by FrontLine but, except as expressly provided herein, shall not otherwise use the name or any trademark or servicemark of FrontLine to market, advertise or promote the Licensed Products and Services or any other products, or services, without FrontLine's express written consent.

8.    **Transfer**.  FrontLine may freely assign and transfer any or all of its rights or obligations under this Agreement and any or all of its rights and obligations in the Licensed Patents without CRS's approval.  The license, rights and obligations of CRS arising under this Agreement are personal to CRS.  It is also agreed and understood that CRS may not  transfer the license under any circumstance to the following companies: Eschool Solution (Orlando, Florida), Substitute Online, Inc. (Mukilteo, Washington) and Substitute Personnel Solutions, Inc. (Kingston, Pennsylvania). CRS shall have no right to transfer or assign this Agreement or any part thereof to any third party without the prior permission of FrontLine, which permission will not be unreasonably withheld or delayed.

-5-

Notwithstanding the preceding sentence, CRS may assign this Agreement, without the permission of FrontLine, to an affiliate assuming the business of CRS associated with this Agreement or to a third party who by merger or stock acquisition acquires substantially all of the assets of CRS associated with performance under this Agreement or acquires a controlling interest in CRS. CRS acknowledges that any transfer or assignment is limited in scope to the Licensed Products and Services, as defined herein. An end-user sub-licensee or intermediary sub-licensee shall have no right to transfer any part of its sublicense.

## 9.     General Provisions.

9.1     **Choice of Law.** This Agreement will be governed by, and construed and interpreted according to, the substantive laws of the State of Pennsylvania.

9.2     **Choice of Forum and Attorneys' Fees.** Any claim or action arising in any way out of this Agreement or the Licensed Patents must be brought in the United States District Court in the Eastern District of Pennsylvania, or, if subject matter jurisdiction cannot be obtained in that court, in any court of competent jurisdiction sitting in Chester County, Pennsylvania. FrontLine and CRS hereby submit to the jurisdiction and venue of said courts for these purposes and waive all defenses relating to said jurisdiction and venue. In the event of any litigation or claim relating to this Agreement or the Licensed Patents, the prevailing party shall be entitled to an award of reasonable attorneys' fees and expenses to the extent permitted by law.

9.3     **Entire Agreement.** This Agreement is the final and entire agreement between the parties relating to their subject matter and supersedes any and all prior or contemporaneous discussions, statements, representations, warranties, correspondence, conditions, negotiations, understandings, promises and agreements, oral and written, with respect to such subject matter.

9.4     **No Reliance.** The parties each acknowledge that, in entering into this Agreement, they have not relied upon any statements, representations, warranties, correspondence, negotiations, conditions, understandings, promises and agreements, oral and written, not specifically set forth in this Agreement. All of the parties represent that they are represented by legal counsel and have been fully advised as to the meaning and consequence of all of the terms and provisions of this Agreement.

9.5     **Waiver; Modifications.** No provision of this Agreement shall be waived unless in writing signed by the party effecting such waiver. No waiver of the breach of any of the terms or provisions of this Agreement shall be a waiver of any preceding or succeeding breach of this Agreement or any other provisions of it. No waiver of any default, express or implied, made by any party hereto shall be binding upon the party making such waiver in the event of a subsequent default. This Agreement may only be modified or amended by a written agreement executed by each of the parties.

WSHLIB01 198882.1

9.6   **Notices**. All notices and other communications required or permitted hereunder shall be in writing and shall be mailed by Federal Express or other nationally recognized overnight carrier, registered or certified mail, postage prepaid, or otherwise delivered by hand or by messenger, with written indication of delivery or tender, when applicable, addressed to Michael Blackstone of FrontLine at 5 Great Valley Parkway, Suite 300, Malvern, Pennsylvania 19355 or to Steve Uzupis of CRS, Inc. at 500 Arch Street, Williamsport, Pennsylvania 17701, or at such other address as either party may substitute by written notice provided to the other party in such manner.  Such notices shall be deemed to have been served when delivered, or if delivery is not accomplished by reason of some fault of the addressee, when tendered.

9.7   **Severability**.  In the event that any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, void, illegal, or unenforceable in any respect, such invalidity, voidness, illegality or unenforceability shall not affect any other provision of this Agreement, and the remaining portions shall remain in full force.

9.8   **Cooperation**. Each of the parties hereto shall execute and deliver any and all additional papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties hereto.  CRS specifically agrees to cooperate with FrontLine, in any proceeding to defend the Licensed Patents against any claim of non-infringement, invalidity, or unenforceability, which includes but is not limited to, joining the proceeding as a party, executing non-disclosure agreements, assist in responding to interrogatories and document requests, participating in hearings, depositions, or trial as a witness, and compelling any current or former employee of CRS to appear at a hearing, deposition, or trial at FrontLine's expense .

9.9   **Obligations**.  CRS hereby agrees to continue to use its commercially reasonable efforts in distributing, advertising, and otherwise selling its Licensed Products and Services.

9.10   **Titles**.  Some Paragraphs of this Agreement have titles and some do not. The fact that some Paragraphs hereof do not have titles shall have no significance.  The titles are included for ease of reference only, and shall not be used to construe the meaning of this Agreement.

9.11   **Authority**.   All parties and authorized representatives signing this Agreement represent and warrant that they have authority to execute and enter into this Agreement.

9.12   **Counterparts**.   This Agreement may be executed in multiple counterparts.

**10.**   **Confidentiality of the Agreement.**  The Parties, their principals, employees, and successors shall not have any communications with any person, party, entity, or other

organization, (except for its bankers, accountants, tax advisors and/or legal counsel whose services are required to comply with this Agreement and, to the extent necessary, its end-user and intermediary sub-licensees, who shall be advised of, and bound by, the confidentiality obligations of this Article), regarding the terms of this Agreement or regarding any lawsuit between the Parties involving the Licensed Patents, except as set forth in a mutually acceptable press release.  The Parties, their principals, employees, and successors shall not disclose any such terms and conditions of this agreement without express written permission of the other, unless such disclosure is (a) lawfully required by any governmental agency; (b) otherwise required to be disclosed by law including legally required financial reporting, or (c) necessary in any legal proceeding in order to enforce any provision of this Agreement .  In the event the terms and conditions of the Agreement are to be disclosed, a Party shall provide written notice to the other Party no less than ten (10) days prior to any disclosure.

IN WITNESS WHEREOF, the parties have executed this Agreement through their duly authorized representatives on the respective dates set forth below.

FRONTLINE DATA, Inc. (FRONTLINE)

By: _____

Name: _MICHAEL BLACKSTONE_
Title: _PRESIDENT / CEO_
Date: _11/9/04_

CRS, INC. (CRS)

By: _Steve Uzupis_
Name: _Steven Uzupis_
Title: _Vice President_
Date: _November 5, 2004_

-8-

## CERTIFICATE OF SERVICE

I, Darrel C. Karl, hereby certify that on this 24th day of July 2007, a true and correct copy

of the foregoing Answer and Counterclaims was served upon the following, as indicated below:

### VIA ELECTRONIC CASE FILING (ECF)

John P. Donohue, Jr.
Woodcock Washburn
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

This document has been filed electronically and is available for viewing and downloading from

the ECF system.

/s/ *Darrel C. Karl*
DARREL C. KARL