IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRONTLINE TECHNOLOGIES, INC., | : | CIVIL ACTION |
| | : | NO. 07-2457 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CRS, INC., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 22, 2011

TABLE OF CONTENTS

I.    INTRODUCTION............................................. 2
II.   BACKGROUND............................................... 2
III.  DISCUSSION............................................... 6
      A.   Motion to Amend.................................... 7
      B.   Motion to Dismiss................................. 7
           1.   Standard of Review........................... 7
           2.   Applicable Law............................... 8
           3.   Application................................. 10
                a. Covenant's Limitation to Portion of CRS's
                Products................................... 11
                b. Covenant's Limitation to CRS Under Present
                Ownership.................................. 14
IV.   CONCLUSION.............................................. 18

## I.    INTRODUCTION

Before the Court is a motion to dismiss certain counterclaims for non-infringement and invalidity of a disputed patent. The Court must determine whether, under the Declaratory Judgment Act, there remains a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment after a patent holder granted a limited covenant not to sue a competitor regarding the disputed patent.

## II.   BACKGROUND

On June 18, 2006, Frontline Technologies, Inc. ("Frontline") filed this patent infringement and breach-of-contract action against CRS, Inc. ("CRS") over a service/technology that facilitates replacement of absent workers with substitute workers. Frontline maintains a product named "Aesop," which is a labor database wherein customers access a website to post worker absences for which substitutes are needed. Am. Compl. ¶ 9, ECF No. 29. Substitute workers then access Aesop to search for posted worker absences and to commit to filling vacancies. Id. Users access Aesop via the Internet using a web interface or via a telephone interactive voice response ("IVR") system. Id.

On January 6, 2004, the U.S. Patent and Trademark Office ("PTO") issued U.S. Patent No. 6,675,151 ("the '151 Patent") for the substitute worker technology. Id. ¶ 12. Frontline is the assignee and owner of the '151 Patent. Id. ¶ 13. In February 2004, Frontline Data, Frontline's predecessor, filed a patent infringement suit against CRS and the two reached a settlement agreement in November 2004 whereby Frontline Data agreed to license its technology to CRS in return for royalties. Id. ¶¶ 15-16. Frontline alleges CRS failed to pay royalties pursuant to the limited licensing agreement ("License Agreement"). Id. ¶¶ 18-23.

On August 8, 2007, the PTO granted an ex parte reexamination of claims three through thirteen of the '151 Patent. Id. ¶ 28. Accordingly, the Court placed the action in suspense on November 19, 2007. Order, Nov. 19, 2007, ECF No. 15. During the PTO reexamination, claims fourteen through fifty-five were added to the '151 Patent and claims three, six, nine, and fourteen through fifty-five were listed in the reexamination certificate as patentable. See id. ¶¶ 31, 32, Ex. C.

On September 30, 2008, during the '151 Patent reexamination period, the PTO issued U.S. Patent No. 7,430,519 ("the '519 Patent"), titled "Substitute Fulfillment System" and a continuation-in-part of the '151 Patent, to Roland R.

Thompson, Michael S. Blackstone, and Ralph Julius. Id. ¶¶ 33-34. Frontline is assignee and owner of the '519 Patent. Id. ¶ 35.

On January 14, 2010, Frontline filed an Amended Complaint, which alleges three counts against CRS.[1] Frontline claims CRS infringed, continues to infringe, and induced infringement of the reexamined '151 Patent associated with CRS's SubFinder product ("Count I"). Id. ¶¶ 37-39. Frontline claims CRS infringed, continues to infringe, and induced infringement of the '519 Patent with CRS's SubFinder product ("Count II"). Id. ¶¶ 45-47. And Frontline claims CRS breached the License Agreement ("Count III"). Frontline seeks declaratory and injunctive relief and damages. Id. at 9-10.

On February 3, 2010, CRS, which filed an Amended Answer and Counterclaims that raises various affirmative defenses and counterclaims, states that Frontline has breached the License Agreement for the '151 Patent and denies all claims for infringement of the '151 and '519 Patents.[2] Am. Answer, ECF

---

[1]     The counts are not numbered in the Amended Complaint. For ease of identification, the Court will number the counts.

[2]     CRS asserts seven counterclaims. Am. Answer 12-16. CRS seeks a declaratory judgment that CRS did not infringe the '151 Patent ("Counterclaim I"). CRS seeks a declaratory judgment that the '151 Patent is invalid ("Counterclaim II"). CRS seeks a declaratory judgment that it has not infringed the '519 Patent ("Counterclaim III"). CRS seeks a declaratory judgment that the '519 Patent is invalid ("Counterclaim IV"). CRS seeks a declaratory judgment that it did not breach the License

4

No. 30. CRS requests declaratory and injunctive relief and damages. Id. at 16-17.

On February 23, 2010, Frontline filed an amended reply denying CRS's counterclaims and asserting various affirmative defenses.

On February 8, 2011, the Court issued an order and accompanying memorandum constructing certain disputed claim terms. Order, Feb. 8, 2011, ECF No. 56; Mem. Op., Feb. 8, 2011, ECF No. 55. The parties continued with discovery.

On August 12, 2011, Frontline unilaterally granted to CRS a covenant not to sue ("the Covenant"). Mot. to Dismiss Ex. A, ECF No. 66-1. The relevant portions of the Covenant are as follows:

> 1.   The Term "SubFinder System" as used hereinafter is defined as that portion of the products and/or services made, used, offered for sale, sold, or imported by CRS, for performing substitute fulfillment via a communications link, on or prior to the Covenant Date, specifically including but not limited to, those portions of versions SubFinder 5.7, SubFinder 5.8, SubFinder 5.9, SubFinder 5.10, and SubFinder 5.11 that perform substitute fulfillment via a communications link.

---

Agreement for the '151 Patent ("Counterclaim V"). CRS claims Frontline wrongfully terminated the License Agreement ("Counterclaim VI"). And CRS claims Frontline breached the License Agreement by failing to accord CRS most-favored nation treatment and to reduce the royalty obligation of CRS and its sublicensees in accordance with section 3.3 of the License Agreement ("Counterclaim VII").

2.  Frontline hereby unconditionally covenants not to sue CRS for direct, induced or contributory infringement under any claim of the 519 Patent or any claim that may be issued as a result of the Reexamination proceeding based upon CRS's manufacture, use, importation, sale, or offer of sale of any SubFinder System on, before or after the Covenant Date . . . .

5.  This covenant applies only to CRS under its present ownership and control and shall cease to apply if there are any material changes in the present ownership and control of CRS.

Id.

On August 15, 2011, Frontline filed a Motion to Dismiss and Motion to Amend the Complaint. Id. On September 1, 2011, CRS opposed the Motion to Dismiss. Opp'n, ECF No. 67. The matter is now ripe for review.[3]

**III. DISCUSSION**

Frontline moves to amend its Amended Complaint to remove a count for infringement of the '519 Patent and to dismiss CRS's counterclaims relating to the '519 Patent. For the reasons provided, the Court will grant both motions.

---

[3]  Motions to Exclude certain expert testimony and CRS's Motion for Summary Judgment are also pending in this case but not addressed herein.

A.    Motion to Amend

        Frontline moves to amend its Amended Complaint to remove Count II for infringement of the '519 Patent. "In all other cases [wherein a party may not amend as a matter of course], a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). CRS does not oppose the motion to amend. Opp'n 1. Therefore, the Court will grant leave to file a second amended complaint as unopposed.


B.    Motion to Dismiss

        Frontline moves to dismiss for lack of subject-matter jurisdiction Counterclaims III and IV, which seek declaratory judgments that CRS did not infringe the '519 Patent and that the '519 Patent is invalid.


        1.    Standard of Review

        Frontline moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. In particular, Frontline argues that the Court lacks jurisdiction to issue a declaratory judgment regarding CRS's counterclaims of non-infringement and invalidity of the '519 Patent. When a party challenges the factual basis for the

Court's jurisdiction, the Court is "not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000). CRS, the party seeking declaratory relief, shoulders the burden of establishing the existence of an actual case or controversy sufficient to support jurisdiction.[4] See Benitec Austrl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).

### 2.   Applicable Law

The federal courts are courts of limited jurisdiction. See U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ."). The Court may not issue an advisory opinion wherein "a genuine adversary issue between the parties" does not exist. See United States v. Johnson, 319 U.S. 302, 304 (1943). But under the Declaratory Judgment Act, the Court may declare the rights of an

---

[4]      Notably, CRS fails to cite a single legal authority supporting its argument that the Court has jurisdiction over the relevant declaratory judgment claims. Indeed, the only legal authority to which CRS cites is to support its argument to reserve its right to collect attorneys' fees. Opp'n 6.

interested party in the case of an "actual controversy."[5] The

U.S. Supreme Court has provided the following guidance:

> Our decisions have required that the dispute be
> definite and concrete, touching the legal relations of
> parties having adverse legal interests; and that it be
> real and substantial and admit of specific relief
> through a decree of a conclusive character, as
> distinguished from an opinion advising what the law
> would be upon a hypothetical state of facts. . . .
> Basically, the question in each case is whether the
> facts alleged, under all the circumstances, show that
> there is a substantial controversy, between parties
> having adverse legal interests, of sufficient
> immediacy and reality to warrant the issuance of a
> declaratory judgment.

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)

(internal citations and quotation marks removed). The Court has

"'unique and substantial discretion in deciding whether to

declare the rights of litigants.'" Id. (quoting Wilton v. Seven

Falls Co., 515 U.S. 277, 286 (1995)).

A charge of patent infringement establishes a case or

controversy adequate to support jurisdiction. Id. But "an actual

controversy must be extant at all stages of review." Id. at

1345. If jurisdiction is challenged after an action commences,

the burden of proof remains with the party seeking to assert

_____

[5]     "In a case of actual controversy within its
jurisdiction, . . . any court of the United States, upon the
filing of an appropriate pleading, may declare the rights and
other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be
sought." 28 U.S.C. § 2201(a).

jurisdiction under the Declaratory Judgment Act. See id. A covenant not to sue is sufficient to divest the Court of jurisdiction. See Benitec, 495 F.3d at 1349.

The Court had jurisdiction over CRS's counterclaims for non-infringement and invalidity, which CRS raised in response to Frontline's patent infringement claims. See Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993). Frontline challenged jurisdiction by granting the Covenant and moving to dismiss its claim for infringement of the '519 Patent. Whether a covenant not to sue divests the Court of jurisdiction depends on what is covered by the covenant. See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009). Therefore, the Court must determine whether Frontline's unilateral covenant not to sue is sufficient to divest the Court of jurisdiction over CRS's counterclaims.

3.   Application

CRS argues that the Court retains jurisdiction to issue a declaratory judgment because the Covenant only covers a portion of CRS's products and because the Covenant limits CRS's future business opportunities.

a.      Covenant's Limitation to Portion of CRS's
        Products

CRS argues that an actual case or controversy remains between the parties because the Covenant limits Frontline's agreement not to sue only to a portion of CRS's products and only covers certain claims of the '519 Patent.[6] Opp'n 3-4. The Court lacks jurisdiction over CRS's counterclaims referring to the '519 Patent.

To remove jurisdiction over a declaratory judgment, the Covenant need only cover past and present activities that are potentially infringing or future infringing activities of sufficient immediacy and reality. See Benitec, 495 F.3d at 1345-46. In Benitec, the Federal Circuit affirmed the dismissal of Nucleonics, Inc.'s ("Nucleonics") declaratory judgment counterclaim against Benitec Australia, Ltd. ("Benitec"), regarding a patent for human gene-silencing therapy. Id. at 1349. Nucleonics planned to engage in human gene-silencing therapy, which would have been considered infringing activity after it filed a new drug application ("NDA") with the U.S. Food

─────────────────────

[6]      Specifically, CRS argues that an actual controversy exists because the Covenant limits Frontline's promise not to sue only to the portion of CRS's SubFinder products that perform substitute fulfillment "via a communications link." Opp'n 3. Furthermore, CRS argues that, based on the definition of SubFinder, the Covenant only relates to claims in the '519 Patent that recite the language "via a communication link." Id. at 3-4.

and Drug Administration. Nucleonics represented that it did not plan to file an NDA until "at least 2010-2012, if ever." The court was uncertain when Nucleonics would engage in the potentially infringing activity and, therefore, Nucleonics failed to show an actual controversy of sufficient immediacy and reality to warrant a declaratory judgment with regard to human application of the gene-silencing technology. Id. at 1346-47.

The parties do not cite to and the Court is not aware of any precedential cases holding that a covenant not to sue divests the court of jurisdiction only when the covenant refers to all of the claims in a particular patent. But the District of New Jersey considered the issue. See Hoffman-La Roche, Inc. v. Mylan, Inc., No. 09-1692, 2009 WL 4796736 (D.N.J. Dec. 9, 2009). There, Hoffman-La Roche ("La Roche") sued Mylan Pharmaceuticals, Inc. ("Mylan") for patent infringement. Mylan counterclaimed that the patent was not enforceable and not infringed by Mylan's generic product. La Roche identified claim six of the patent as being infringed and granted a covenant not to sue for infringement on the remaining claims, claims one through five. La Roche argued that the covenant divested the court of jurisdiction over those unasserted claims. The court first noted that the Federal Circuit has "not specifically address[ed] partial covenants" and that there is nothing to suggest that partial covenants are subject to a different rule than covenants

12

covering an entire patent. Id. at *7. The court also noted that La Roche's counsel took the position that the covenant was "without exceptions or limitations" regarding future infringement actions for the unasserted claims. Id. The covenant, therefore, was sufficiently broad to divest the court of jurisdiction over the counterclaims relating to claims one through five of the patent at issue. Id.

Here the Covenant expressly includes CRS's SubFinder products that perform substitute fulfillment "via a communications link." Although CRS takes issue with this language, CRS has not shown that an actual controversy continues to exist notwithstanding the Covenant. CRS has not shown that it has any products that simultaneously do not perform substitute fulfillment "via a communications link" and are potentially infringing the '519 Patent. Indeed, CRS fails to show that any of its products are not covered by the Covenant but still subject to an infringement suit by Frontline under a claim in the '519 Patent. Finally, CRS fails to show its products could be the subject of another suit based on the claims in the '519 Patent that do not recite the phrase "via a communications

link." The Court, therefore, lacks jurisdiction over CRS's

counterclaims regarding the '519 Patent.[7]

b.    Covenant's Limitation to CRS Under Present
      Ownership

CRS argues that an actual case or controversy remains

between the parties because the Covenant significantly limits

CRS's future business opportunities. Opp'n 4-5. CRS has not

shown an actual controversy of sufficient immediacy and reality

to warrant a declaratory judgment and the Court, therefore,

lacks jurisdiction over CRS' counterclaims regarding the '519

Patent.

------------------------------

[7]      Whether CRS may develop a future product that could be
subject to suit under the '519 Patent is not before the Court.
The Court notes, however, that it cannot base jurisdiction on
the mere possibility that CRS may develop a future product that
does not perform substitute fulfillment via a communications
link where CRS fails to show it has engaged in any preparations
for making or using a product that could be subject to an
infringement action by Frontline notwithstanding the Covenant.
See Benitec, 495 F.3d at 1346; Dodge-Regupol, Inc. v. RB Rubber
Prods., Inc., 585 F. Supp. 2d 645, 651 (M.D. Pa. 2008)
("[Defendant's] fear of litigation over future products does not
preclude [Plaintiff's] covenant not to sue from eliminating
subject matter jurisdiction with respect to [Defendant's]
declaratory claims."); see also Cat Tech L.L.C. v. TubeMaster,
Inc., 528 F.3d 871, 880 (Fed. Cir. 2008) (concluding that
"whether there has been meaningful preparation to conduct
potentially infringing activity remains an important element in
the totality of circumstances which must be considered in
determining whether a declaratory judgment is appropriate" after
MedImmune).

Speculative future business relationships that may expose a litigant to an infringement action are not sufficient to create an actual controversy. Benitec, 495 F.3d at 1348-49. In Benitec, in addition to application of the gene-silencing technology to humans, which was subject to a federal safe harbor provision, the Federal Circuit also considered whether future application of the same technology to animals, which would not be subject to the safe harbor, created an actual controversy for jurisdiction over the declaratory judgment claims. Id. at 1348. Nucleonics submitted a declaration of its president providing that it wished to expand its efforts to animal husbandry and veterinary products, that it entered discussions with a supplier of breeding stock, and that it executed a confidentiality agreement with the supplier. Id. Nevertheless, Nucleonics failed to establish an actual controversy, in part, because its mere expectation to begin work in this area shortly was of insufficient immediacy and reality for a declaratory judgment. Id. at 1348-49.

And here, CRS similarly fails to meet this burden. CRS argues that the Covenant's limitation to CRS under its present ownership does not significantly remove an actual case or controversy because it prevents CRS from conducting its

15

business.[8] Indeed, CRS claims and provides a sworn declaration of CRS's treasurer and chief financial officer who swears that CRS "has entertained offers from various entities over the years who were interested in acquiring CRS, both prior to and during this litigation." Opp'n 4; Dill Decl. ¶ 4, ECF No. 67-2. CRS further claims that an entity interested in acquiring CRS approached it in February 2011, the companies executed a confidentiality agreement in March 2011, and discussions continued into April 2011, until "further talks between the parties were suspended pending further developments in the litigation." Opp'n 4; Dill Decl. ¶¶ 5-6. Finally, CRS claims that certain owners are "retired or of retirement age," which limits CRS's ability to change ownership. Opp'n 5; Dill Decl. ¶ 8.

CRS has shown how the Covenant might limit its future business opportunities. But it has not shown that an actual controversy continues to exist between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.[9] Benitec's representations that it might take some

_____

[8]    CRS points to the Covenant language that states that it "applies only to CRS under its present ownership and control and shall cease to apply if there are any material changes in the present ownership and control of CRS." Opp'n 4.

[9]    Nor has CRS pointed to a single legal authority supporting its argument that a Covenant's limitation of future business opportunities is sufficient to establish an actual

future action regarding the patented technology were not sufficient to create an actual controversy, even where Benitec was actively engaged in pursuing a business relationship that could have subjected it to an infringement suit. And the same is true here. CRS claims that it may be subject to infringement in the future because of a change in its ownership. And CRS has shown that it is pursuing a business relationship that could subject it to an infringement action by Frontline in the future. Nevertheless, an actual controversy does not exist in the present, nor has CRS shown that an actual controversy is imminent and real.

The Court cannot speculate as to whether CRS might be successful in pursuing new business relationships. Therefore, the Court will dismiss CRS's counterclaims for non-infringement and invalidity of the '519 Patent because there is no substantial controversy between Frontline and CRS of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See MedImmune, 549 U.S. at 127.

---

controversy. CRS makes no attempt to distinguish the facts of Benitec, much less cite to this precedential decision.

## IV.   CONCLUSION

For the reasons provided, the Court will grant Frontline's unopposed Motion to Amend its Amended Complaint to remove Count II for infringement of the '519 Patent. The Court will grant Frontline's Motion to Dismiss and dismiss Counterclaims III and IV. An appropriate order will follow.