IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRONTLINE TECHNOLOGIES, INC., :    CIVIL ACTION
                             :    NO. 07-2457
     Plaintiff,           :
                             :
        v.               :
                             :
CRS, INC.,                :
                             :
     Defendant.         :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                       JULY 26, 2012

## I.   INTRODUCTION

Plaintiff Frontline Technologies, Inc. ("Plaintiff") filed this patent infringement and breach of contract action against Defendant CRS, Inc. ("Defendant") over a technology that facilitates replacement of absent workers with substitute workers. Plaintiff avers that Defendant's SubFinder products infringe U.S. Patent No. 6,675,151 ("the '151 patent") for substitute worker technology. Second Am. Compl. ¶ 14, ECF No. 96. In its Second Amended Complaint, Plaintiff pleads two counts: (1) infringement of the '151 patent and (2) breach of a license agreement between Plaintiff and Defendant. Id. ¶¶ 36-43, 52-55.

Currently pending before the Court is Plaintiff's Motion for Summary Judgment on Defendant's patent misuse

defense.  For the reasons set forth below, the Court will grant Plaintiff's Motion.


## II.   BACKGROUND

Plaintiff alleges patent infringement of its '151 patent that claims a labor database wherein customers access a website to post worker absences for which substitutes are needed.  Id. ¶¶ 9, 12.  Plaintiff's product practicing the claimed invention is called "Aesop."  Id. ¶ 9.  Substitutes access Aesop to search for posted worker absences and to commit to filling vacancies.  Id.  Users access Aesop via the Internet using a web interface or via a telephone interactive voice response ("IVR") system.  Id.

On January 6, 2004, the U.S. Patent and Trademark Office ("PTO") issued the '151 patent for the substitute worker technology.  Id. ¶ 12.  The '151 patent claims priority of filing date to U.S. Patent No. 6,334,133 ("the '133 patent").  Plaintiff is the assignee and owner of the '151 patent.  Second Am. Compl. ¶ 13.  In February 2004, Frontline Data, Plaintiff's predecessor, filed a patent infringement suit against Defendant. Frontline Data and Defendant reached a settlement agreement in November 2004 whereby Frontline Data agreed to license its technology to Defendant in return for royalties.  Id. ¶¶ 15-16.

2

Plaintiff alleges Defendant failed to pay royalties pursuant to the limited licensing agreement ("License Agreement"). Id. ¶¶ 18-23. In particular, and relevant here, the License Agreement required a fee on gross revenues from the sale of "Licensed Products and Services." License Agreement ¶ 3.1, Am. Compl. Ex. B, ECF No. 29-2. The agreement defines "Licensed Products and Services" as those products that would "infringe an unexpired, valid, and enforceable claim" of the '133 patent or '151 patent. Id. ¶ 1.1. After an audit in 2007, Plaintiff determined that Defendant failed to pay the proper royalties under the License Agreement. Specifically, Plaintiff alleged that Defendant failed to account for sales where a substitute teacher used a telephone to fill a wanted position. Defendant contended that the License Agreement did not cover such uses because they did not infringe either the '133 patent or '151 patent. Plaintiff disagreed, terminated the License Agreement, and filed the instant lawsuit on June 18, 2007. See Compl., ECF No. 1.

On August 8, 2007, the PTO granted an ex parte reexamination of claims 3 through 13 of the '151 patent. Second Am. Compl. ¶ 28. Accordingly, the Court placed the action in suspense on November 19, 2007. Order, Nov. 19, 2007, ECF No. 15. During the PTO reexamination, claims 14 through 55 were

3

added to the '151 patent and claims 3, 6, 9, and 14 through 55 were listed in the reexamination certificate as patentable.[1]  See Second Am. Compl. ¶¶ 31, 32; Am. Compl. Ex. C.

On September 30, 2008, during the '151 patent reexamination period, the PTO issued U.S. Patent No. 7,430,519 ("the '519 patent"), titled "Substitute Fulfillment System," a continuation-in-part of the '151 patent, to Roland R. Thompson, Michael S. Blackstone, and Ralph Julius.  Am. Compl. ¶¶ 33-34.  Plaintiff is assignee and owner of the '519 patent.  Id. ¶ 35.

On January 14, 2010, Plaintiff filed an Amended Complaint, which alleges three counts against Defendant.[2] Plaintiff claims Defendant infringed, continues to infringe, and induced infringement of the '151 patent associated with Defendant's SubFinder products ("Count I").  Id. ¶¶ 37-39. Plaintiff claims Defendant infringed, continues to infringe, and induced infringement of the '519 patent with Defendant's SubFinder products ("Count II").  Id. ¶¶ 45-47.  And Plaintiff claims Defendant breached the License Agreement ("Count III"). Plaintiff seeks declaratory and injunctive relief and damages. Id. at 9-10.

---

[1]     The Court refers to the reexamined '151 patent and its claims as the "'151 patent."

[2]     The counts are not numbered in the Amended Complaint. For ease of identification, the Court will number the counts.

4

On February 3, 2010, Defendant filed an Amended Answer and Counterclaims ("Answer") that raises various affirmative defenses and counterclaims, states that Plaintiff has breached the License Agreement, and denies all claims for infringement of the '151 and '519 patents.[3]  Defendant requests declaratory and injunctive relief and damages.  Answer 16-17, ECF No. 36.

On February 23, 2010, Plaintiff filed an amended reply denying Defendant's counterclaims and asserting various affirmative defenses.

On February 8, 2011, the Court issued an order and accompanying memorandum construing certain disputed claim terms. Order, Feb. 8, 2011, ECF No. 56; Mem. Op., Feb. 8, 2011, ECF No. 55.  The parties continued with discovery.

---

[3]      Defendant asserts seven counterclaims.  Answer 12-16. Defendant seeks a declaratory judgment that Defendant did not infringe the '151 patent ("Counterclaim I").  Defendant seeks a declaratory judgment that the '151 patent is invalid ("Counterclaim II").  Defendant seeks a declaratory judgment that it has not infringed the '519 patent ("Counterclaim III"). Defendant seeks a declaratory judgment that the '519 patent is invalid ("Counterclaim IV").  Defendant seeks a declaratory judgment that it did not breach the License Agreement for the '151 patent ("Counterclaim V").  Defendant claims Plaintiff wrongfully terminated the License Agreement ("Counterclaim VI"). And Defendant claims Plaintiff breached the License Agreement by failing to accord Defendant most-favored nation treatment and to reduce the royalty obligation of Defendant and its sublicensees in accordance with paragraph 3.3 of the License Agreement ("Counterclaim VII").

On August 12, 2011, Plaintiff granted Defendant a Covenant Not to Sue on the '519 patent.  Mot. to Dismiss Ex. A, Aug. 15, 2011, ECF No. 66-1.  On August 15, 2011, Plaintiff filed a Motion to Dismiss Counterclaims III and IV and a Motion to Amend the Complaint.  Id.  On September 1, 2011, Defendant opposed the Motion to Dismiss.  Opp'n, Sept. 1, 2011, ECF No. 67.  On December 23, 2011, the Court issued an order and accompany memorandum granting Plaintiff's Motion to Dismiss and granting Plaintiff leave to amend its Amended Complaint.[4]  See Order, Dec. 23, 2011, ECF No. 95; Mem. Op., Dec. 23, 2011, ECF No. 94.

On December 5, 2011, Plaintiff filed a Motion for Summary Judgment on Defendant's patent misuse defense.  ECF No. 89.  Defendant responded in opposition.  ECF No. 92.  Plaintiff filed a reply.  ECF No. 99.  The motion is now fully briefed and ripe for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is

---

[4]     Plaintiff's Second Amended Complaint is the same as its Amended Complaint, but removes its claim of infringement of the '519 Patent.  Thus, Count I remains for infringement of the '151 patent, and Count III remains for breach of the License Agreement.

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
"A motion for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact."  Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).
A fact is "material" if proof of its existence or non-existence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  Anderson, 477 U.S.
at 248.

        In undertaking this analysis, the court views the
facts in the light most favorable to the non-moving party.
"After making all reasonable inferences in the nonmoving party's
favor, there is a genuine issue of material fact if a reasonable
jury could find for the nonmoving party."  Pignataro v. Port
Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing
Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.
1997)).  While the moving party bears the initial burden of
showing the absence of a genuine dispute of material fact,
meeting this obligation shifts the burden to the non-moving
party who must "set forth specific facts showing that there is a
genuine issue for trial."  Anderson, 477 U.S. at 250.

**IV.  DISCUSSION**

Plaintiff moves for summary judgment on Defendant's affirmative defense of patent misuse.  Plaintiff contends that it has not misused its patent rights as defined by law.

A.  Applicable Law

"Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which 'requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect.'" Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997) (quoting Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986) (internal quotation marks omitted)).  If the licensing arrangement and restrictions therein "relate[] to subject matter within the scope of the patent claims" there is no patent misuse.  Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 708 (Fed. Cir. 1992).  However, if the licensing arrangement expands the patentee's statutory grant, then the court must assess whether that expansion has anticompetitive effects under the "rule of reason."  Id.  "Under the rule of reason, 'the finder of fact must decide whether the questioned

8

practice imposes an unreasonable restraint on competition,
taking into account a variety of factors, including specific
information about the relevant business, its condition before
and after the restraint was imposed, and the restraint's
history, nature, and effect.'"  Va. Panel, 133 F.3d at 869
(quoting State Oil Co. v. Kahn, 522 U.S. 3, 10 (1997)).  In the
end, the doctrine of patent misuse is a narrowly construed
defense and "is not available to a presumptive infringer simply
because a patentee engages in some kind of wrongful commercial
conduct, even conduct that may have anticompetitive effects."
Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1329 (Fed.
Cir. 2010), cert. denied, 131 S. Ct. 2480 (2011).


    B.   Analysis

       Under this standard, neither party makes any argument
that the alleged misuse would or would not violate the rule of
reason.  Instead, both rest their arguments on whether the
licensing arrangement in this case impermissibly expands
Plaintiff's rights under the '133 and '151 patents.
Accordingly, the Court only considers whether Plaintiff
improperly expanded the scope of its patent rights.

       Plaintiff argues that the License Agreement in
question was negotiated at arms-length, and Defendant was not

coerced into accepting the terms of the License Agreement
Defendant now asserts amount to patent misuse.  Moreover,
Plaintiff argues that the License Agreement's provision that the
royalty would be 8 percent of the gross revenues of sales from
the Licensed Products and Services was put in for the
convenience of the parties.  Therefore, it does not amount to
patent misuse.

      Defendant argues that the terms of the License
Agreement only require royalties on sales of products that
infringe either the '133 patent or '151 patent.  Defendant
argues that Plaintiff began demanding payment of royalties when
substitutes were secured using a telephone, rather than on the
Internet.  In this regard, Defendant argues that while the
License Agreement itself does not constitute patent misuse,
Plaintiff's subsequent actions of threatening to terminate the
License Agreement unless Defendant paid royalties on the
allegedly non-infringing telephonic substitute securing
constitutes patent misuse.  Moreover, Defendant argues that the
License Agreement was not negotiated at arms-length, but in
response to Plaintiff's first suit of infringement in 2004.
Defendant concludes that the intent of the parties as to what
conduct was covered under the licensing agreement is inherently

a factual question that the parties dispute.  Therefore, summary judgment is inappropriate here.

In this case, the Court will grant Plaintiff's Motion for Summary Judgment because Plaintiff's enforcement of the License Agreement did not unlawfully expand its patent rights. "[C]onditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse."  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 135 (1969).  A total-sales royalty provision, therefore, will amount to patent misuse if such a provision requires the licensee to pay a royalty on total sales of products, regardless if some of those products do not infringe the asserted patents.  Yet, the Supreme Court in Zenith explained that if such a total royalty provision is inserted into the contract for the "convenience of the parties . . . there [is] no misuse of the patents and no forbidden conditions attach[] to the license."  Id. at 138.  Along these lines, "patent misuse inheres in a patentee's insistence on a percentage-of-sales royalty, regardless of use, and his rejection of licensee proposals to pay only for actual use." Id. at 139.  Nevertheless, a licensee cannot just insist on paying on use of the patented product alone and then turn around and pay nothing "because he finds he can produce without using

11

the patent." Id. at 140.  The key consideration under Zenith is "the voluntariness of the licensee's agreement to the royalty provisions." Engel Indus., Inc. v. Lockformer Co., 96 F.3d 1398, 1408 (Fed. Cir. 1996).

The terms of the License Agreement here do not constitute patent misuse.  The License Agreement provides the following: "During the term of this Agreement Defendant shall pay to FrontLine a Running Royalty which constitutes 8% of the gross revenues received from the sale, lease or license ("Sales") of Licensed Products and Services . . . ." License Agreement ¶ 3.1, Am. Compl. Ex. B.  By its terms, the License Agreement only requires royalties based upon Defendant's sale, lease, or license of a product that infringes either the '133 patent or '151 patent.  See id.  Moreover, the record reflects that Defendant specifically negotiated for this term's inclusion in the License Agreement.  Compare License Agreement [Draft], Pl.'s Memo. in Supp. of Mot. for Summ. J. Ex. 39, ECF No. 89 [hereinafter Pl.'s Br.], with License Agreement, Am. Compl. Ex. B; see also Uzupis Dep. 137:3-12, June 30, 2011, Pl.'s Br. Ex. 34.  Therefore, Plaintiff hardly insisted "on a percentage-of-sales royalty, regardless of use." Zenith, 395 U.S. at 139. But instead, Plaintiff included this language at Defendant's insistence.  The language specifically requires royalty payment

12

for infringing products only and not on all of Defendant's sales.  No reasonable jury could conclude that Defendant's agreement to this provision was anything but voluntary; therefore, this provision does not constitute patent misuse.[5] See Engel, 96 F.3d at 1408.

Defendant's argument that Plaintiff is now using the License Agreement to extract royalties for unpatented products is also unavailing.  Distilled to its essence, Defendant's argument is that the parties now disagree on whether using a telephone to fulfill substitute requests infringes either the '133 patent or '151 patent.[6]  Simply, this is not patent misuse;

---

[5]      Defendant also argues that the License Agreement was not negotiated at arms-length because the parties entered into this agreement as a result of a settlement after Plaintiff's predecessor sued Defendant for infringement in 2004.  This argument does not move the Court.  Licensing agreements are entered into routinely as a result of the settlement of patent infringement suits.  For the Court to take this fact into account would be to consider the naked fact that because a licensing agreement exists there is patent misuse.  The law of patent misuse does not support such an argument.

[6]      Defendant's argument that the asserted claims of the '151 patent are not infringed by telephonic securing is unavailing.  The License Agreement covers all claims of the '133 patent and '151 patent, not just the asserted claims here. There is no argument that other claims of the '133 or '151 patents do not cover telephonic securing.  Similarly, Defendant's argument regarding whether royalties were calculated correctly with respect to "box-on-site" use versus ASP use have no bearing on whether Plaintiff expanded its rights under the '133 and '151 patents.  That argument is better suited to whether there was a breach of the License Agreement.

this is a contract dispute.  There is no evidence of record to show the Defendant was coerced at the time of the licensing to pay royalties based on anything other than products that infringe either the '133 patent or '151 patent.

Defendant's additional arguments are also unavailing. In an attempt to presumably show some coercion, Defendant argues that at the time of the licensing, the parties understood that substitute fulfillments made over the phone did not constitute patent infringement, and the License Agreement did not require their inclusion in the calculation of royalties.  See Def.'s Memo. in Opp'n to Pl.'s Mot. for Summ. J. 24-26, ECF No. 92. Even taken as true, the fully integrated License Agreement makes no mention of this "fact."  See License Agreement ¶ 9.3, Am. Compl. Ex. B.  In the end, there is a fundamental disagreement between the parties as to whether Defendant's SubFinder products that use telephonic substitute fulfillment infringe the '133 patent or '151 patent.  This disagreement is not patent misuse. Put simply, Plaintiff is not requiring Defendant to pay royalties on technology the parties agree does not infringe the asserted patents — that situation is classic patent misuse and is different in kind than the facts of this case.  Accordingly, the Court holds that no reasonable jury could find that Plaintiff has impermissibly expanded the scope of its patent

14

monopoly.  Cf. C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained, nor is otherwise legal competition such behavior as to warrant creation of a new class of prohibited commercial conduct when patents are involved.").  Therefore, the Court will grant Plaintiff's Motion.


**V.   CONCLUSION**

        For the reasons set forth above, the Court will grant Plaintiff's Motion for Summary Judgment on Patent Misuse.  An appropriate order will follow.