# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRONTLINE TECHNOLOGIES, INC., | Civil Action No.:  2:07-cv-2457 |
| Plaintiff/Counterclaim Defendant, | |
| v. | Hon. Eduardo C. Robreno |
| CRS, INC., | **JURY TRIAL DEMANDED** |
| Defendant/Counterclaim Plaintiff. | |

**CRS'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO STAY THE LITIGATION PENDING THE FINAL OUTCOME OF
THE PTO'S REVIEW OF THE ASSERTED CLAIMS OF THE PATENT-IN-SUIT**

Dated:  January 29, 2013

E. Robert Yoches
Darrel C. Karl
Finnegan, Henderson, Farabow,
 Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Charles S. Marion (PA 56509)
Noah S. Robbins (PA 206803)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4119

Attorneys for CRS, Inc.

## TABLE OF CONTENTS

I. BACKGROUND .......... 1

II. THE AIA STAY PROVISION .......... 3

III. A GRANT OF A STAY WOULD BE IN THE INTEREST OF JUSTICE .......... 4

A. A Stay Will Simplify the Issues and Eliminate or Streamline the Trial .......... 4

B. A Stay Will Obviate the Time and Expense of Substantial Pretrial Activity .......... 5

C. Denial of a Stay Would Prejudice CRS .......... 6

D. A Stay Will Reduce The Burden of Litigation .......... 6

IV. CONCLUSION .......... 7

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010) ............................................................................................... 2

*Broadcast Innovation L.L.C. v. Charter Communications*,
   No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11, 2006) ............... 3

*In re Ferguson*,
   558 F.3d 1359 (Fed. Cir. 2009) .................................................................................. 4

**FEDERAL STATUTES**

35 U.S.C. § 101 ........................................................................................................ *passim*

35 U.S.C. § 112, ¶ 1 .......................................................................................................... 1

35 U.S.C. § 321 ................................................................................................................. 1

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 6(a) and (d), secs. 316(a)(11)
   and 326(a)(11), 125 Stat. 302, 309 (2011) ................................................................. 2

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 329-31 (2011) ...... *passim*

**OTHER AUTHORITIES**

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ....................................................... 3, 4, 7

Defendant CRS, Inc. ("CRS") submits this memorandum of law in support of its motion for an order staying the litigation in accordance with Section 18(b) of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, sec. 18, 125 Stat. 331 (2011).  The U.S. Patent and Trademark Office recently granted CRS's petition to institute transitional covered-business-method-patent review of the asserted claims of the Frontline patent-in-suit, based on its finding that CRS has demonstrated that it is more likely than not that the challenged claims are unpatentable under 35 U.S.C. § 101.  A stay until the final outcome of the pending PTO proceeding is appropriate, is in the interest of justice, and will help conserve the parties' and the Court's resources, as it potentially eliminate the substantial burden on the parties and on the Court.

## I.     BACKGROUND

On September 16, 2012, CRS filed a petition pursuant to 35 U.S.C. § 321, section 18 of the Leahy-Smith America Invents Act ("AIA"), requesting review of claims 3, 6, 7, 16, 24, and 33 of Frontline's reexamined U.S. Patent No. 6,675,151 ("the '151 patent").[1]  The petition sought review on two grounds: (1) that the asserted claims were unpatentable under 35 U.S.C. §101 because they encompassed only abstract unpatentable subject matter, and (2) that the asserted claims were invalid under 35 U.S.C. § 112, first paragraph, because they lacked sufficient written description in the patent specification.

On January 23, 2013, the Patent Trial and Appeal Board ("PTAB") granted CRS's petition on the first ground[2] and instituted a review of claims 3, 6, 7, 16, 24, and 33 of the '151

---

[1] See Ex. A (without original attachments).   September 16, 2012 was the earliest possible date authorized under the newly-enacted law for the filing of such a petition.  AIA, § 18(a)(2), 125 Stat. 330.  Claims 3, 6, 7, 16, 24, and 33 of the '151 patent are the only claims asserted by Frontline against CRS in this litigation.

[2] The PTAB did not find that CRS had shown that it was more likely than not that the challenged claims were unpatentable under 35 U.S.C. §112, ¶ 1, and therefore did not institute review on that ground.

1

patent based on CRS's challenge that the claims are unpatentable under § 101.  See Ex. B.  In reaching that conclusion, the PTAB rejected Frontline's argument that the '151 patent was not a covered business method patent.  Ex. B at 6-9.  In particular, it found that the claims did not satisfy the Supreme Court's "machine or transformation" test set forth in *Bilski v. Kappos*, 130 S. Ct. 3218, 3224 (2010), because they were "not tied to a particular machine or apparatus and d[id] not transform a particular article into a different state or thing."  Ex. B at 11.  Rather, the generic servers, communication links, and databases were "employed only for the purposes of creating more efficient communication and data storage" and that they did not "impose meaningful limits on the scope of the claims and is not integral to the invention as a whole."  *Id.*

The PTAB also found that the technological features recited by the '151 patent claims were "well-known at the relevant time period," referred only to "generic hardware," and were not "novel or unobvious on the effective filing date of the '151 patent."  Ex. B at 9.  As a result, the PTAB concluded that it "is more likely than not that independent claims 3 and 6 encompass an abstract idea that is patent ineligible" and that, "[f]or the same reasons . . . it is more likely than not that dependent claims 7, 16, 24, and 33 encompass patent-ineligible subject matter."  Ex. B at 13; *see also id*. at 9-10.

In addition, the PTAB issued a Scheduling Order (Ex. C) on January 23, 2013 setting, *inter alia*, a tentative final hearing date (if requested) for this transitional covered-business-method-patent review of August 13, 2013.  Ex. C at 6.  Although it is possible to move the hearing date earlier (Ex. C at 2), the PTAB's order does not permit the parties to extend this date because the PTAB proceeding must conclude within one year.  AIA § 6(a) and (d), secs. 316(a)(11) and 326(a)(11), 125 Stat. at 302, 309.  The PTAB has ordered an initial conference call

with the parties for February 7, 2013, at which time the parties will discuss their proposed changes to the PTAB's Scheduling Order.

## II. THE AIA STAY PROVISION

Section 18(b) of the AIA expressly provides a mechanism by which a party may seek a stay of a civil action for patent infringement on account of the PTO's institution of a transitional covered-business-method-patent review proceeding:

(b) REQUEST FOR STAY.--

(1) IN GENERAL.--If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on--

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

(2) REVIEW.--A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.

Senator Schumer, one of the two architects of the AIA noted that the Act's four-factor test codifies the analysis used in *Broadcast Innovation L.L.C. v. Charter Communications*, No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11, 2006). Senator Schumer said section 18(b)(1) "places a very heavy thumb on the scale in favor of a stay." 157 Cong. Rec. S1364, S1053 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). He noted "it is nearly impossible to imagine a scenario in which a district court would not issue a stay." *Id.* Moreover,

Senator Schumer suggested that a denial of a stay needs "an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination." *Id.* at S1364 (daily ed. Mar. 8. 2011). He also noted that "congressional policy strongly favoring stays when proceedings are instituted under . . . section [18]." *Id*. at S1379.

As noted above, the Court's decision either granting or denying a requested stay entitles the losing party to an immediate interlocutory appeal to the U.S. Court of Appeals for the Federal Circuit. With respect to interlocutory appeals, Senator Schumer said "the filing of an interlocutory appeal should result in the stay of proceedings in the district court pending the appeal." *Id.* at S1364. "Staying the lower court proceedings while the Federal Circuit reviews the question of whether the case should be stayed pending the post-grant review will help ensure that requests to stay are consistently applied across cases and across the various district courts." *Id.* Senator Schumer also opined, "On appeal the Federal Circuit can and should review the district court's decision de novo." *Id*.

### III.  A GRANT OF A STAY WOULD BE IN THE INTEREST OF JUSTICE

The instant stay motion appears to be the first such motion filed in accordance with Section 18(b) of the AIA, and thus there is as yet no governing case precedent on the subject. Nonetheless, the legislative history evinces a clear bias in favor of issuing such stays, and a review of the relevant factors in this case reveals that a grant of the requested stay clearly would be in the interest of justice.

#### A.  A Stay Will Simplify the Issues and Eliminate or Streamline the Trial

Patent-subject-matter eligibility under 35 U.S.C. § 101 is a pure issue of law. *In re Ferguson*, 558 F.3d 1359, 1363 (Fed. Cir. 2009). Although the PTAB not yet issued a final decision whether the asserted claims of the '151 patent are unpatentable under 35 U.S.C. § 101,

4

its decision to institute transitional covered-business-method patent review shows a substantial likelihood that the asserted claims of the '151 are invalid.

If the '151 patent claims are invalid, CRS has a complete defense to Frontline's allegation of patent infringement, mooting the need for an infringement trial and litigation of CRS's other validity defenses.  In addition, this would also provide a complete defense to Frontline's allegation of breach of contract, as royalties under the parties' license were only due on CRS's activity covered by valid claims of the '151 patent.  Consequently, a favorable decision by the PTO would result in dismissal of Frontline's complaint with prejudice.

Even if the PTAB should conclude that the asserted claims of the '151 patent are patentable, this will create collateral estoppel on this issue and prevent CRS from litigating the section 101 defense in this proceeding.  See AIA § 18(a)(1)(D).  Thus, either way, the outcome of the PTO proceeding will result in this litigation being streamlined.

On the other hand, denying the requested stay will not simplify any issues or streamline the trial.  It will only create judicial inefficiently since CRS has also raised the section 101 invalidity defense in this litigation.  The inefficiency of having two proceedings to resolve the same legal issue is self-evident.

### B. A Stay Will Obviate the Time and Expense of Substantial Pretrial Activity

Although discovery is complete in this case, the Court has set no trial date.  Substantial pre-trial activity remains, including the exchange of trial exhibits, the filing of objections to trial exhibits and responses, the designation of deposition testimony, the filing of objections to deposition testimony designations and responses thereto, and the parties' preparation of the final pretrial order.  The time and cost involved in such activity, together with witness preparation, the creation of trial demonstratives, and other costly and time-consuming pre-trial work, can all be avoided if a stay is granted and the PTAB concludes that the asserted claims of the '151 patent

5

are invalid. In addition, there are a number of pending motions awaiting resolution by the Court, such as motions *in limine*, *Daubert* motions, and a motion to strike. These would become moot if the PTAB found the claims ineligible for patent protection.

### C. Denial of a Stay Would Prejudice CRS

The pending PTO proceeding provides a relatively inexpensive forum to resolve the section 101 issue and potentially all or substantially all of the parties' disputes. Frontline, however, by virtue of its size and financial strength, would gain a tactical advantage over CRS if a stay were denied in that it could more easily afford the burdensome cost of parallel proceedings. Moreover, since trial counsel for both CRS and Frontline are also involved in the PTO proceeding, parallel proceedings create a serious risk of attorney scheduling conflicts for both parties.

Frontline, on the other hand, will not suffer any undue prejudice from the grant of a stay. Until now, Frontline has not taken any steps to expedite the trial and, indeed, has repeatedly requested CRS to join in several of its requests for extensions of time. Given that no trial date has been set and further pretrial preparation activity remains, any final judgment will likely not be entered until well after the final hearing date in the PTAB. In any event, Frontline can, and indeed should, work with CRS to expedite the conduct of the PTO proceeding by stipulating to earlier schedule dates.

### D. A Stay Will Reduce The Burden of Litigation

As has been discussed above, a grant of a stay will, in the short run, obviate the parties' need to engage in burdensome and expensive pretrial activity and to assume the costs of trial, all or substantially all of which will be mooted by a favorable PTAB decision holding the asserted claims of the '151 patent unpatentable. It will additionally postpone, perhaps indefinitely, the Court's need to decide pending motions, to schedule and preside over a lengthy jury trial, and to

rule upon the parties' inevitable post-trial motions. A denial of a stay, however, will in no way reduce the burden of this litigation on either the parties or on the Court.

In short, the record is devoid of any "extraordinary" circumstances not contemplated in the existing case law which would compel the Court to deny the requested stay. Rather, a grant of the requested stay would be entirely consistent with the "congressional policy strongly favoring stays when proceedings are instituted under . . . section [18]." 157 Cong. Rec. at S1379.

## IV.   CONCLUSION

For the foregoing reasons, CRS respectfully requests that the Court grant this Motion and issue an order staying the litigation until the final outcome of the pending PTO proceeding.

Respectfully submitted,

Dated:  January 29, 2013

By:  /s/ *Darrel C. Karl*
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
darrel.karl@finnegan.com

Charles S. Marion (PA 56509)
Noah S. Robbins (PA 206803)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4119

Attorneys for CRS, Inc.